UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

COLBY C. BLACK,                       )
                                      )
        Plaintiff            )
                                      )
v.                                    )     No. 1:16-cv-00572-JAW
                                      )
NANCY A. BERRYHILL,                   )
Acting Commissioner of Social Security, )
                                      )
        Defendant           )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erroneously attributed little weight to a United States Department of Veterans Affairs ("VA") disability ratings decision, as well as the examinations on which it was based, and made a mental residual functional capacity ("RFC") determination unsupported by substantial evidence. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 9) at 7-15. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2016, Finding 1, Record at 13; that, through his date last insured, he had severe impairments of a personality disorder/borderline personality disorder and a substance use disorder/marijuana dependence, Finding 3, *id*.; that, through his date last insured, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id*. at 14; that, through his date last insured, he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: on a sustained and competitive basis he could understand and remember simple instructions, use judgment in making simple work-related decisions, respond appropriately to supervisors, coworkers, and usual work situations not involving the public or requiring collaborative work, and adapt to changes in the ordinary work setting, Finding 5, *id*. at 16; that, through his date last insured, considering his age (29 years old, defined as a younger individual, on his date last insured), education (at least high school), work experience (unskilled), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 20-21; and that he, therefore, had not been disabled at any time from August 1, 2013, his alleged onset date of disability, through his date last insured, March 31, 2016, Finding 11, *id*. at 21.[2] The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be

---

[2] As discussed below, the ALJ erred in stating that the plaintiff's alleged onset date of disability was August 1, 2013. In fact, it was December 1, 2014.

supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## I. Discussion

### A. Handling of VA Disability Ratings Decision

The plaintiff, a veteran who served in the Army between July 11, 2005, and July 11, 2008, received a VA disability ratings decision dated October 1, 2013, granting him entitlement to individual unemployability effective February 8, 2013. *See* Record at 698. The VA cited as evidence an earlier ratings decision dated March 23, 2013 (which is not of record) and VA medical facility treatment records for the period from January 24-28, 2010. *See id.* It noted:

> VA has awarded you total disability compensation because your service-connected disability(ies) keep you from working full-time. Although we determined that you are currently unable to work, we would like to encourage you to apply for vocational rehabilitation benefits. VA's Vocational Rehabilitation and Education program has helped many veterans with disabilities obtain suitable and rewarding employment.

*Id*. at 699. The record also contains a summary of benefits dated February 16, 2015, explaining that, although the plaintiff had a combined 80 percent service-connected disability, he was being paid at the 100 percent rate because he was unemployable due to his service-connected disabilities. *See id*. at 193.

> In the section of his decision addressing opinion evidence, the ALJ noted, in relevant part:
>
> I considered the VA's disability rating decision; however, I attribute little weight to its conclusions, particularly that the [plaintiff] is unemployable. At the outset, it must be noted that the disability standard employed by the VA differs significantly from the standard used by the Social Security Administration. Moreover, the [plaintiff's] VA's disability rating decision dated October 1, 2013, provides additional services and opportunities for "even seriously disabled veterans . . . to capitalize on the skills [they] already have and gain new ones so that [they] can reenter the workforce at the level [their] disabilities permit." In this respect, consistent with this decision, the [plaintiff] is not "unemployable."

*Id*. at 19 (citations omitted). Earlier, in discussing the record evidence, the ALJ had also observed, in relevant part:

> [D]espite the [plaintiff's] severe and "nonsevere" medically determinable mental impairments, and his disability rating from the [VA], the objective medical findings, course of treatment, and the [plaintiff's] reported level of daily activity is at least consistent with his ability to perform basic work-related activities within the above-residual functional capacity.
>
> . . . In a disability rating dated February 16, 2015, the VA noted that the [plaintiff] is receiving 100% service connected disability benefits because his impairments render him unemployable. Nevertheless, as discussed in detail below, treatment records revealed that the [plaintiff] is working in some capacity through the VA's compensated work therapy ("CWT") program.

*Id*. at 17 (citations omitted)

The plaintiff first argues that the ALJ failed to provide a valid reason for assigning the VA's disability ratings decision little weight, warranting remand pursuant to *Genness-Bilecki v. Colvin*, No. 1:15-cv-387-JHR, 2016 WL 4766229 (D. Me. Sept. 13, 2016). *See* Statement of Errors at 7-8. In *Genness-Bilecki*, this court found reversible error when an ALJ dismissed a VA disability ratings decision "out of hand on the sole basis that the standards [employed by the VA and the commissioner] differ." *Genness-Bilecki*, 2016 WL 4766229, at *3.

The plaintiff notes that the first basis given by the ALJ in this case for according the VA disability ratings decision little weight was rejected by this court as inadequate, standing alone, in *Genness-Bilecki*. *See* Statement of Errors at 7. He argues that the second basis is invalid because the ALJ simply quoted standardized notice language regarding the availability of programs to help disabled veterans reenter the work force. *See id.* Finally, he contends that the ALJ's reliance on his attempts to participate in the VA's CWT program was misplaced for two reasons. *See id.* at 7-8. First, he notes, the ALJ found, seemingly contradictorily, that he had not engaged in substantial gainful activity ("SGA") from August 1, 2013, through March 31, 2016. *See id.*[3] Second, he points out that the ALJ erroneously concluded that he had engaged in work attempts after his alleged onset date of disability based on the mistaken finding that his alleged onset date was August 1, 2013, rather than December 1, 2014. *See id.* at 8. He observes that the ALJ identifies no evidence that he engaged in any work activity after January 2014, nearly a year prior to his alleged onset date of disability. *See id.*; Record at 18.

---

[3] Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities . . . that you do for pay or profit." 20 C.F.R. § 404.1572(a) & (b). The primary consideration in determining whether particular work constitutes SGA is the earnings that the claimant derives from that activity. *Id.* § 404.1574(a)(1).

The commissioner concedes that the first rationale for the assignment of little weight is insufficient, standing alone, under *Genness-Bilecki* and that the second, involving the mere quotation of standardized language concerning work opportunities, "is also likely insufficient, by itself, to justify discounting the VA ratings decision." Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 4.

However, she contends that the ALJ validly afforded the ratings decision little weight based on the fact that the plaintiff held multiple jobs continuing into the time period during which the VA rated him as unemployable, particularly considering that he made contemporaneous statements indicating that many of the jobs ended for reasons unrelated to his mental condition. *See id*. at 4-5; *see also* Record at 17-18 (noting that between 2011 and 2013 plaintiff worked as a line cook, package handler, and mechanic and sold scrap metal and that he had contemporaneously reported that he left at least some of those jobs for reasons other than his mental impairments; for example, that he had been let go due to a slowdown in production, had been laid off, and was unable to perform one job because it was too physically demanding).

The commissioner has the better argument. In this case, unlike in *Genness-Bilecki*, the ALJ did not dismiss a VA disability ratings decision out of hand for an invalid reason. Rather, he accorded it "little weight" for a valid reason, aligning this case with *Smith v. Colvin*, No. 2:13-CV-00066-JAW, 2014 WL 220721 (D. Me. Jan. 21, 2014), and *Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919 (D. Me. July 7, 2011) (rec. dec., *aff'd* July 29, 2011), which this court deemed materially distinguishable from the facts in *Genness-Bilecki*. *See Genness-Bilecki*, 2016 WL 4766229, at \*3 (handling of VA disability ratings decisions passed muster in *Smith* when ALJ explained that he gave them limited weight not only because applicable standards differed but also because the VA did not discuss the claimant's functional limitations, assess his RFC, or cite to

specific objective medical findings, and in *Pierce* when Disability Review Board gave little weight to VA disability ratings decision because VA had supplied limited rationale and ALJ had made findings supported by substantial evidence based on same medical information relied on by VA).

As the commissioner observes, *see* Opposition at 5, the fact that the plaintiff's work was not performed at the SGA level did not undercut the ALJ's reliance on it, *see* 20 C.F.R. § 404.1571 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). While, as a result of the ALJ's onset date misstatement, he erroneously found that the plaintiff worked during his period of alleged disability, the thrust of his criticism of the VA disability ratings decision was that the *VA* deemed the plaintiff unemployable even during a period when he was performing work. *See* Record at 17-19. That rationale holds, despite the onset date error.

The plaintiff, hence, falls short of demonstrating entitlement to remand based on the ALJ's handling of the VA disability ratings decision.

### B. Treatment of Underlying VA Records

The plaintiff next seeks remand on the basis of the ALJ's alleged mishandling of reports of compensation and pension ("C&P") examinations performed by VA providers in connection with the plaintiff's VA disability ratings decisions. *See* Statement of Errors at 9-12. He focuses on the ALJ's rejection of a March 18, 2013, report of a mental health C&P examination by psychologist Philip S. Pierce, Ph.D., including Dr. Pierce's diagnosis of bipolar disorder. *See id*.; Record at 491-99.

7

### 1. Rejection of Bipolar Disorder Diagnosis

At Step 2, the ALJ found that a diagnosis for bipolar affective disorder was not established in the medical evidence of record and, therefore, the plaintiff had no medically determinable impairment of bipolar disorder. *See* Record at 14. He explained:

> Although the [plaintiff] argues that bipolar disorder is sufficiently established by the medical evidence of record, the record does not support his assertion. For example, in 2010 and 2011, Carol L. Browning, M.D. (Dr. Browning), the [plaintiff's] treating psychiatrist, diagnosed the [plaintiff] with a rule-out diagnosis for bipolar disorder noting that he presents with vague symptoms that at times are inconsistent. On November 29, 2011, [Dr. Pierce] during his initial psychological [C&P] examination noted that the [plaintiff] "clearly did not have a bipolar disorder. Most, if not all of the symptoms attributed to bipolar disorder II were in fact due to the severe borderline personality disorder." Although Dr. Pierce, in a subsequent [C&P] examination[,] noted diagnoses for bipolar disorder and borderline personality disorder, Susanne Stiefel, Ph.D. (Dr. Stiefel), the [plaintiff's] treating-psychologist, consistently noted bipolar disorder as a rule-out diagnosis. In this respect, I find that Dr. Stiefel's rule out diagnosis is more persuasive as her finding is based on the [plaintiff's] longitudinal treatment history and not a single consultative examination.

*Id*. (citations omitted).

The plaintiff complains that, in discounting the 2013 Pierce report, the ALJ failed to address Dr. Pierce's objective findings on which the VA disability ratings decision was primarily based, namely, a clinical interview, the Beck Depression Inventory-II, the Millon Clinical Multiaxial Inventory-III, the Minnesota Multiphasic Personality Inventory-II, and a Global Assessment of Functioning ("GAF") score of 50, reflecting "serious impairment in social and occupational functioning, with disorganized thinking and behavior." Statement of Errors at 9-10 (quoting Record at 499). He points out that Dr. Pierce deemed him more seriously mentally ill than in 2011, noting that "[h]is psychological test data were now consistent with bipolar II disorder, which diagnosis was first made when the [plaintiff] was in the U.S. Army." *Id*. at 10 (quoting Record at 499).

He asserts that the ALJ erroneously relied on Dr. Stiefel's rule-out diagnosis of bipolar disorder when neither Dr. Stiefel nor Dr. Browning ever actually ruled out the possibility of bipolar disorder as an accurate diagnosis. *See id*.

I find no error.[4] "Resolving conflicts in the evidence and drawing inferences from the record are the ALJ's prerogatives." *Smith v. Colvin*, No. 15-2521, 2016 WL 4757403, at *1 (1st Cir. Aug. 30, 2016). The ALJ did so here. As counsel for the commissioner noted at oral argument, the fact that Drs. Stiefel and Browning never definitively ruled out bipolar disorder as a diagnosis is immaterial: what matters is that neither definitively diagnosed it. "An entry 'rul[ing] out' a particular ailment or condition is *not* a diagnosis of that ailment or condition." *Coleman ex rel. A.P. v. Astrue*, Civil No. 09-8-P-H, 2009 WL 3517583, at *2 (D. Me. Oct. 29, 2009) (rec. dec., *aff'd* Nov. 17, 2009) (citations omitted) (emphasis in original). Drs. Stiefel and Browning continuously listed bipolar disorder as a rule-out diagnosis, even after Dr. Pierce diagnosed it in 2013. *See, e.g.*, Record at 368, 381-82, 412, 425, 432-33, 462, 464-65, 489. The ALJ permissibly resolved the conflict by electing to credit the opinions of Drs. Stiefel and Browning that a diagnosis of bipolar disorder had not been definitively established, based on a longitudinal treatment history rather than a one-time consultative examination.

## 2. Rejection of 2013 Pierce Report Generally

In addressing the opinion evidence of record, the ALJ explained, in relevant part:

> I also considered the various medical and psychological [C&P] examinations including those conducted by Molly C. Jennings, PA, Richard Possee, PA, Pamela Black-Gould, Ph.D., and [Dr. Pierce]. However, I attribute little weight to their conclusions because they offered their opinions well before the [plaintiff's] alleged-onset date. Further, Ms. Jennings['] opinion limiting the [plaintiff] to even a moderate exertional work capacity with the need to stand and stretch or walk briefly is not supported by the medical evidence of record. Moreover, the consultative

---

[4] Hence, I do not reach the plaintiff's argument that the error was not harmless given the ALJ's acknowledgement at hearing that, if he had accepted Dr. Pierce's 2013 report, the plaintiff's mental impairments would have met the criteria of a listing, *see* Statement of Errors at 10-12, a proposition that the commissioner disputes, *see* Opposition at 10-11.

9

> psychological examinations do not sufficiently assess the [plaintiff's RFC] despite his impairments. In this respect, particularly the psychological provider's general assessment of social and occupational impairments with deficiencies in most areas such as work, school, family relations, judgment, thinking and/or mood[,] they are of little probative value.

*Id*. at 19-20 (citations omitted).

In the section of his decision discussing his mental RFC findings, the ALJ further noted, in relevant part, that despite Dr. Pierce's findings in 2013 that "the [plaintiff's] mental impairments resulted in occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood" and that "the [plaintiff] appeared more seriously mentally ill than when he previously examined him on November 29, 2011[,]" there was evidence indicating otherwise, including (i) the plaintiff's work in a series of jobs, many of which he left for reasons other than his mental illness, (ii) his activities of daily living, including going fishing and receiving a grade of 95 in a college-level psychology course in 2013, (iii) treatment records indicating in 2013 that bupropion and Vyvanse seemed to be working well in controlling his symptoms, (iv) inconsistent treatment after August 1, 2013, including a three-month break in treatment as of January 2, 2014, with the plaintiff then noting that he was looking for more CWT work, and (v) records indicating that as of November 2015, the plaintiff had inquired about his continuing eligibility for CWT work, reporting that he wanted to be able to work now that he had reliable transportation. *Id*. at 17-18 (citations omitted).

The plaintiff first contests the ALJ's finding that the 2013 Pierce report was offered well before his alleged onset date of disability, asserting that the report was prepared only about nine months prior to his actual alleged onset date. *See* Statement of Errors at 9. Yet, as the

commissioner points out, *see* Opposition at 8, the 2013 Pierce report predated the plaintiff's actual alleged onset date of December 1, 2014, by nearly a year and nine months.[5]

The plaintiff next contests the general discounting of the 2013 Pierce report on the same bases as described above: that the ALJ improperly rejected Dr. Pierce's diagnosis of bipolar disorder and failed to consider the objective findings supporting the report and Dr. Pierce's observation that he appeared more mentally ill in 2013 than in 2011. *See* Statement of Errors at 9-10.

For the reasons discussed above, the ALJ did not err in rejecting the bipolar disorder diagnosis. Nor do I find any overall error in his handling of the 2013 Pierce opinion. He considered it, described the weight given it, and articulated good reasons for ascribing it little weight, including that Dr. Pierce did not purport to offer an RFC opinion and that his general assessment of social and occupational impairments with deficiencies in most areas such as work, school, family relations, judgment, thinking, and/or mood was at odds with other evidence of record, including the plaintiff's roughly contemporaneous work history and activities of daily living. As the commissioner notes, *see* Opposition at 9 n.6, this was more than is required of an ALJ in assessing the opinion of an examining consultant, *see, e.g.*, *Smythe v. Astrue*, No. 2:10-cv-251-GZS, 2011 WL 2580650, at *5 (D. Me. June 28, 2011) (rec. dec., *aff'd* July 21, 2011) (an ALJ is not required to give good reasons for the rejection of an opinion of an examining consultant, *versus* a treating source).[6]

---

[5] At oral argument, the plaintiff's counsel rejoined that the 2013 Pierce report was less than nine months from the erroneous onset date on which the ALJ relied, undermining the ALJ's stated rationale. Nonetheless, as the commissioner's counsel argued, the ALJ reasonably accorded less weight to the Pierce report in part on the basis that it predated the plaintiff's alleged onset date, whether by nine months or a year and nine months.

[6] The plaintiff observes, in passing, that, although the ALJ gave little weight to Jennings' examination report because it was completed in 2011, it was in fact completed in March 2013, less than nine months prior to his actual alleged onset date. *See* Statement of Errors at 9. As the commissioner notes, *see* Opposition at 7, the Jennings report predated the plaintiff's actual onset date by nearly a year and nine months. In any event, as the commissioner contends, *see*

The plaintiff, accordingly, fails to demonstrate entitlement to remand on this basis.

### C. Mental RFC Determination

The plaintiff finally seeks remand on the basis that the ALJ's mental RFC determination is unsupported by substantial evidence because it is neither the product of reliance on expert opinion nor a commonsense judgment by a layperson. *See* Statement of Errors at 12-13; *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

He contends that the error is not harmless because the RFC determination is not more favorable to him than the evidence would otherwise support. *See* Statement of Errors at 13-15; *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("a claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support").

The commissioner argues that there was no harmful error because the assessed RFC is in fact more favorable to the plaintiff than the evidence would otherwise support. *See* Opposition at 11-16. I agree.

The ALJ stated that he gave significant weight to the opinions of agency nonexamining consultants Brenda Sawyer, Ph.D., and Leigh Haskell, Ph.D., that the plaintiff had nonsevere impairments of affective disorder and anxiety-related disorder. *See* Record at 19. However, he

---

Opposition at 6-7, the plaintiff fails to develop any argument that remand is warranted on the basis of ALJ's handling of the Jennings opinion, which addressed his physical impairments, *see* Statement of Errors at 9. Any such argument, accordingly, is waived. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

explained that he gave little weight to their opinions that his personality disorder was nonsevere, "as evidence received at the hearing level demonstrates that it is severe[,] resulting in moderate difficulties in social functioning requiring no public contact and no collaborative work with coworkers." *Id.*

The plaintiff argues that the ALJ's mental RFC is not more favorable than the evidence would otherwise support because, had the ALJ adopted the 2013 Pierce report, he would have concluded that the plaintiff was disabled. *See* Statement of Errors at 13-15. Nonetheless, for the reasons discussed above, the ALJ supportably discounted the 2013 Pierce report, including Dr. Pierce's diagnosis of bipolar disorder.

Moreover, as the commissioner argues, *see* Opposition at 15, notwithstanding the ALJ's statement that he relied on evidence received at the hearing level, this is not a case in which significant portions of the record were added after agency nonexamining consultants completed their review. The commissioner represents, and the plaintiff's counsel did not contest at oral argument, that Drs. Sawyer and Haskell had the opportunity to review the majority of the plaintiff's treatment and examination records, spanning the period through July 2015 and including the 2013 Pierce examination report. *See* Opposition at 15; *see also* Record at 114, 124.[7]

As the commissioner observes, *see* Opposition at 15-16, it is reasonably clear that the ALJ based the limitations contained in his mental RFC on a partial crediting of the plaintiff's own statements and those of his girlfriend. For example, in finding that the plaintiff had moderate difficulties in social functioning, the ALJ cited the plaintiff's own allegations. *See* Record at 15 (observing that plaintiff had "reported that his impairments result in significant difficulties in getting along with others, particularly with those in positions of authority[,]" although at the same

---

[7] My review indicates that the records available to Dr. Haskell spanned the period through November 13, 2015. *See* Record at 124.

13

time he had also reported instances in which he socialized, for example, attending monthly Freemason meetings, church, and a class at the University of Maine). The ALJ also stated that he accorded some weight to the plaintiff's girlfriend's third-party function report, which he described as "generally consistent with the [plaintiff's] statements and provid[ing] further clarification as to the extent of his daily activities." *Id*. at 20 (citation omitted). Finally, the ALJ explained that his mental RFC determination was supported, *inter alia*, by "third-party witness statements" and "hearing testimony[.]" *Id*.

As the commissioner argues, *see* Opposition at 15-17, these facts materially distinguish this case from *Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017). In that case, an ALJ assessed a mental RFC largely, if not entirely, based on the raw medical evidence, giving little weight to the opinion of a treating source that a claimant had marked limitations and little weight to the opinions of two agency nonexamining consultants that her mental impairments were nonsevere. *See Staples*, 2017 WL 1011426, at *3-*4. The ALJ concluded that evidence adduced at the hearing level demonstrated that the claimant's impairments were in fact severe, imposing some moderate restrictions. *See id.* at *3. However, unlike in this case, much of the evidence in *Staples* concerning the impairments at issue postdated the agency nonexamining consultants' opinions, with the ALJ effectively conceding that, because of that, their opinions could not stand as substantial evidence of her mental RFC. *See id*. at *5. In those circumstances, the ALJ could not fairly be said to have "assess[ed] a mental RFC that gave the [claimant] 'the benefit of the doubt' or otherwise was more favorable than the remaining evidence would support[.]" *Id*.

In this case, by contrast, the plaintiff identifies no material evidence unseen by Drs. Haskell and Leigh. Indeed, both had the benefit of review of Dr. Pierce's 2013 report – the very evidence

14

upon which the plaintiff relies to demonstrate harmful error. In the circumstances, the ALJ's finding of any mental limitations reasonably can be described as more favorable than the evidence otherwise would support. *See, e.g., Stanley v. Colvin*, Civil No. 1:13-cv-186-DBH, 2014 WL 1767103, at *2-*4 (D. Me. Apr. 29, 2014) (error in assessing mental limitations unsupported by expert opinion evidence and beyond ken of ALJ as layperson was harmless when claimant relied on a report of an agency examining consultant that was taken into account by two agency nonexamining consultants who deemed her mental impairments nonsevere).

In addition, from all that appears, the evidence unseen by agency nonexamining consultants on which the ALJ relied in finding greater limitation was the plaintiff's own hearing testimony, another circumstance in which this court has found no harmful error in the assessment of an RFC unsupported by expert opinion evidence and beyond the ken of an ALJ as a layperson. *See, e.g., Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961, at *3-*4 (D. Me. Apr. 25, 2014) (claimant not entitled to remand on basis of ALJ's assessment of physical limitations unsupported by expert opinion when record evidence demonstrated impairment was minimal and ALJ relied on claimant's own testimony, as a result of which finding of limitations was more favorable to claimant than evidence otherwise would support); *see also, e.g., Starrett v. Colvin*, No. 2:14-cv-152-JHR, 2015 WL 3966127, at *4 (D. Me. June 29, 2015) ("It is not error to assess restrictions more favorable to a claimant than those set forth by medical experts on the basis of the adoption of a claimant's own testimony.").

In these circumstances, remand is unwarranted because the RFC assessed by the ALJ was more favorable to the plaintiff than the evidence would otherwise support.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 22nd day of September, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge